UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                        :
NATIONAL CITY CORP., ET AL.,            :      CASE NO. 1:08-CV-2189
                                        :
               Plaintiffs,              :
                                        :
vs.                                     :      OPINION & ORDER
                                        :      [Resolving Docs. No. 10, 11.]
MICHAEL S. BOYD,                        :
                                        :
               Defendant.               :
                                        :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 15, 2008, Defendant Michael Boyd moved this Court to vacate the Temporary Restraining Order that the Court had entered in favor of the Plaintiffs. [Doc. 10.] In support of the motion, Boyd complains that the Temporary Restraining Order was issued without a hearing.  Boyd alternatively argues that Plaintiffs National City Corporation and NatCity Investments, Inc. had not established a right to such injunctive relief.  For the following reasons, the Court **DENIES** the Defendant's motion to vacate.

**I. Background**

On September 12, 2008, the Plaintiffs sued Defendant Michael Boyd. [Doc. 1.] With their Verified Complaint, the Plaintiffs generally allege that Plaintiff National City employed Boyd as a financial consultant.  The Plaintiffs further say that Boyd quit his employment with National City and has subsequently solicited National City clients to move their accounts to Merrill Lynch, Boyd's current employer. [Doc. 5 at 9.] The Complaint alleges that this solicitation violates certain

Case No. 1:08-CV-2189
Gwin, J.

contractual non-solicitation agreements.

Under a written contract with the Plaintiffs, Defendant Boyd agreed to restrictions upon his

ability to solicit and to compete should he leave his employment with the Plaintiffs.   In a restricted

stock award agreement, Boyd agreed to the following:

> (a) [Boyd] agrees that he [] will not during his [] employment by the Employers and
> for a period of one year following the later of the termination of salary payments or
> the Salary Continuation Period . . .following the termination of employment, no
> matter how terminated:
>
> (i) *directly or indirectly solicit divert entice or take away any customers, business,
> patronage or orders of the Employers with whom the Grantee has had contact
> involvement or responsibility during his or her employment with the Employers*, or
> attempt to do so, for the sale of any product or service that competes with a product
> or service offered by the Employers,
>
> * * *
>
> Nothing contained in this paragraph 13(a) shall preclude [Boyd] from accepting
> employment with a company, firm, or business that competes with the Employers so
> long as the Grantee's activities do not violate the provisions of [the non-compete
> provisions].

[Doc. 1-3.]

In the same stock award agreement, Defendant Boyd agreed not to disclose trade secrets or

confidential information.  In a September 1, 2005 employment contract, Boyd agreed to similar non-

solicitation provisions and similar trade secret protections. [Doc. 1-4.]

The Plaintiffs employed Defendant Boyd at the Plaintiffs' Springfield, Illinois office.  They

offer evidence that Boyd obtained clients who were pre-existing National City clients or who sought

financial investment services at National City retail offices.  On September 5, 2008, Boyd resigned

from his employment at National City to accept a position with Merrill Lynch at its Springfield,

Illinois office.  With their Verified Complaint and motions for a Temporary Restraining Order, the

Plaintiffs say that Boyd wrongfully solicited National City customers' business after his resignation

-2-

Case No. 1:08-CV-2189
Gwin, J.

from National City.  They seek injunctive relief to prevent Boyd from contacting former customers
or from using National City trade secrets.

## II. Discussion

Defendant Boyd asks this Court to vacate the Temporary Restraining Order that this Court
entered on September 15, 2008. [Doc. 8.] In support of its motion, Defendant Boyd says that "he
filed an opposition to the Plaintiffs' Motion for a Temporary Restraining Order immediately following
the Court's Order which has not been considered."  Boyd argues that under Ohio choice of law rules,
that Illinois law governs the application of Boyd's non-solicitation agreement.  Boyd also argues that
injunctive relief cannot be given because the Plaintiffs do not show irreparable injury, a substantial
likelihood of success on the merits, or that a restraining order will not cause unjustifiable harm to
third parties.

Regarding Boyd's argument that the Plaintiffs cannot show irreparable injury sufficient to
support injunctive relief, this argument runs completely counter to the argument that Merrill Lynch
has made in any number of cases.  For example, in *Merrill Lynch, Pierce, Fenner & Smith v. Kramer,*
816 F. Supp. 1242 (N.D. Ohio 1992), Merrill Lynch sued to restrain a former broker from soliciting
former clients.  In that case, and contrary to the argument made here, Merrill Lynch argued "that it
ha[d] no adequate remedy at law for the harm it [would] suffer in the absence of injunctive relief."
*Id.* at 1247.   As the Court held in *Kramer*: "Plaintiff's point is well taken that "[i]t is impossible to
determine at this time the number of Merrill Lynch clients who will be pirated away by Kramer, nor
is it possible to determine with any degree of certainty the commissions each of these clients will
generate."  *Id.* (citations omitted).

In the *Kramer* case, Merrill Lynch cited to the Court the Fifth Circuit's decision in *Merrill*

Case No. 1:08-CV-2189
Gwin, J.

*Lynch v. Stidham* 658 F.2d 1098, 1102 (5th Cir. 1981) ("The injury here is such that damages could

not adequately compensate. Were Defendants permitted by the law to exploit the clientele of their

former employers, every investment that reasonably flowed from the exploitation should be included

in the damages award. How such a figure could be arrived at escapes us.").  Merrill Lynch relied on

similar arguments in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th

Cir. 1993) ("[T]he available evidence - indicating that Salvano and Coon took various documents and

information pertaining to Merrill Lynch's clients and used that information to solicit Merrill Lynch

customers - sufficiently supports the [district] court's determinations regarding irreparable harm and

the inadequacy of Merrill Lynch's legal remedy.")[1]

        Defendant Boyd argues that money damages can be easily quantified and irreparable injury

is not threatened.  This argument does not persuade.  Most brokerage relationships last many years.

Moreover, many brokerage customers maintain account relationships with multiple financial

institutions.  Against such a background, any determination of the total damages resulting from any

loss of a customer would be extremely difficult.

        Additionally, brokerage customers expect their customer information, addresses and account

histories to be secure and the loss resulting from the breach of such security is difficult to quantify.

In *Kramer*, Judge Dowd of this Court found:

---

        [1]To like effect, see *Merrill Lynch v. Torrens*, N.D. Ohio Case No. 04-cv-2106 (arguing, in an action to
enforce non-solicitation provision, that "Applying the foregoing factors, no fewer than 150 federal and state courts
have granted Merrill Lynch and other securities firms injunctive relief under identical or virtually identical
circumstances. . . . Defendant's contract is limited in duration to one year and only to those customers whom
Defendant serviced or whose names he learned about while employed by Merrill Lynch. Such restrictions are
clearly enforceable under Ohio law . . . . Merrill Lynch clearly will suffer irreparable harm in the absence of
injunctive relief. . . . Accordingly, Defendant's breaches of his post-termination covenants and misappropriation of
Merrill Lynch's trade secret property involves financial loss to Merrill Lynch that is incapable of measurement,
requiring the issuance of an injunction to protect Merrill Lynch from irreparable harm")  [05-cv-2106, Doc. 4.]

Case No. 1:08-CV-2189
Gwin, J.

> Plaintiffs argue with equal strength that irreparable and immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that their financial information, market transactions, and investment assets which they presumed were held in confidence have been disclosed, will lose trust and confidence in Merrill Lynch . . . .The Court finds that Merrill Lynch would be irreparably harmed by Kramer's actions and that there is no adequate remedy at law.

816 F. Supp. at 1247.

In *Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985), the Fourth Circuit also held that immediate injunctive relief was necessary to avoid irreparable injury:

> When an account executive breaches his employment contract by soliciting his former employer's customers, a nonsolicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be "unsolicited."

The Court finds that Plaintiffs have sufficiently supported their claim that irreparable injury will befall them unless Boyd is temporarily restrained.

Alternatively, Defendant Boyd argues that an injunction should not be granted because the Plaintiffs have no substantial likelihood of success on the merits. In making this argument, Defendant Boyd argues that Illinois law should control this determination. As described, Boyd worked in Springfield Illinois. During that employment, Boyd entered a restricted stock award agreement that said that Ohio law would control the interpretation of the agreement. [Doc 1-4, ¶ 25]    However, Boyd also entered an employment agreement that selected Illinois law as controlling.[Doc 1-5, ¶ 7]

In diversity cases, this Court applies the choice-of-law rules and substantive law of the forum state, which is Ohio. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). However, we only consider Ohio's choice-of-law principles when those principles differ from other possible sources of law. *See CenTra, Inc. v. Estrin,* 538 F.3d 402, 409 (6th Cir. 2008) (citing *Williams v. Toys "R" Us*, 138 Fed.Appx. 798, 803 (6th Cir.2005)); *see also In re Bendectin Litigation,* 857 F.2d 290, 306 (6th Cir. 1988). Stated otherwise, choice of law only becomes relevant when it matters,

Case No. 1:08-CV-2189
Gwin, J.

when the alternative states have different controlling law.

Defendant Boyd does not clearly indicate how Illinois law differs from Ohio law regarding the enforceability of restrictive covenants following employment.  Ohio courts rely upon the "reasonableness" test first set forth by the Supreme Court of Ohio in *Raimonde v. VanVlerah*, 325 N.E.2d 544 (Ohio 1975).  Ohio courts thus enforce non-compete agreements in the employment setting when they "determine, on the basis of all available evidence, what restrictions would be reasonable between the parties. Essentially, this test . . . permits courts to fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all the factors comprising 'reasonableness' in the context of employee covenants. *Id.* at 547.  The relevant "reasonableness" factors include:

> [t]he absence or presence of limitations as to time and space, . . . whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

*Id.* (citations omitted); *see also UZ Engineered Prods. Co. v. Midwest Motor Supply Co.,* 770 N.E.2d 1068, 1076 (Ohio Ct. App. 2001) (holding that reasonable non-compete agreements in the employment context "(1) are necessary to protect the employer's legitimate interests, (2) do not impose undue hardship on the employee, and (3) are not adverse to the public interest").  Somewhat uniquely, under Ohio law, "a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests."

Case No. 1:08-CV-2189
Gwin, J.

*Raimonde,* 325 N.E.2d at 547.

Illinois law applies a similar standard.  Under Illinois law, when considering the enforceability of a covenant not to compete in an employment setting, the "test applied by Illinois courts is whether the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer." *Dam, Snell & Taveirne, Ltd., v. Verchota,* 754 N.E.2d 464, 468 (Ill. Ct. App. 2001). When a legitimate interest exists, the restriction's reasonableness still must be "measured by its hardship to the employee, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions." *Lawrence & Allen, Inc. v. Cambridge Human Res. Group, Inc.,* 685 N.E.2d 434, 441 (Ill. Ct. App. 1997).

Ohio and Illinois law differs little excepting that when a restrictive provision is unreasonable under Illinois law, Illinois bars enforcement. *See YCA, LLC v. Berry*, No. 03-C-3116, 2004 WL 1093385, at *18 (N.D. Ill. May 7, 2004).  In contrast, under Ohio law, when a non-compete agreement is unreasonable: "the court may nevertheless fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all factors comprising 'reasonableness' in the context of employee covenants." *Raimonde*, 325 N.E.2d 544, ¶ 25.

Both Illinois and Ohio consider whether restrictions upon solicitation are reasonable. In this case, the stock grant agreement and his employment agreement restricted Boyd from soliciting National City customers or any person who Boyd had solicited while employed by National City for one year.  This agreement did not otherwise restrict Boyd from employment in the financial industry, save for restricting his use of National City trade secrets.  At this point, Boyd makes no argument that these restrictions are unreasonable.  Absent a finding of unreasonableness, the different remedial

-7-

Case No. 1:08-CV-2189
Gwin, J.

provision of Ohio law are not implicated and there is no need for a choice of law determination.

With regard to whether Plaintiff National City shows a substantial likelihood of success on the merits, Boyd says that he did not take any customer information or documents with him when he resigned.  He says he recalled customer names and general account information without using National City files.  However, he acknowledges contacting National City customers and arguably soliciting their accounts: "I mailed out announcements to my clients as a professional courtesy to let them know that I had changed employers. I also telephoned some of those people, to explain what had happened . . . ." [Doc 9-1].

In an earlier contract accepting continued employment with NatCity Investments, Defendant Boyd had broadly agreed not to solicit former customers:

> (a) The Employee shall not, at any time while employed by NatCity, and for a period of one year (1) following the termination of such employment, regardless of the reason for such termination, directly or indirectly, . . . solicit, accept or service the investment or insurance business of: (1) any customer of National City at the time of the Employee's termination (excluding members of Employee's immediate family).

[Doc. 1-5 at ¶ 7.]

The Plaintiffs offers evidence that Boyd solicited National City customers. [Doc. 1-2 at ¶ 11.] Defendant Boyd admits that he contacted National City customers both by mail and phone.  Given this evidence, the Plaintiffs show a substantial likelihood of success on the merits, at least with regard to their claim that Boyd breached the non-solicitation provisions of his employment contract and restricted stock award agreement.

### III. Conclusion

For the reasons stated above, the Plaintiffs show a likelihood of success on the merits of at least their claim that Defendant Boyd breached his non-solicitation agreement.  The Plaintiffs also

-8-

Case No. 1:08-CV-2189
Gwin, J.

show that they are without an adequate remedy at law, that they will suffer irreparable harm without

injunctive relief, and that the balance of equities favor the granting of the temporary restraining order

pending the preliminary injunction hearing set for September 24, 2008.  The Court thus **DENIES** the

Defendant's motion to vacate.

      IT IS SO ORDERED.


Dated: September 17, 2008                  *s/     James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE